IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRYL BRODZINSKI | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 16-6125 |
| STATE FARM FIRE AND CASUALTY | : | |
| COMPANY | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                           **AUGUST 25, 2017**

Presently before the Court is the Motion for Partial Summary Judgment of Defendant State Farm Fire and Casualty Company. (ECF No. 13.) For the following reasons, Defendant's Motion will be granted.

**I.     BACKGROUND**

This lawsuit arises from an insurance coverage dispute. Plaintiff Darryl Brodzinski seeks damages from Defendant State Farm Fire and Casualty Company for Defendant's failure to pay benefits to Plaintiff under a homeowner's insurance policy. Plaintiff asserts claims against Defendant for breach of contract and bad faith. In this Motion, Defendant seeks summary judgment with respect to the bad faith claim.

**A.     Factual Background**

Plaintiff resides at 59 Berrywood Lane, Dresher, Pennsylvania. Plaintiff alleges that on March 9, 2016, water escaped from a condensation line on an air conditioning unit, and caused damage to his basement. (Compl. ¶ 5.) Plaintiff's home was insured under a homeowner's insurance policy issued by Defendant State Farm (the "Policy"). (*Id*. ¶ 4.) Plaintiff retained Hillis Adjustment Agency to investigate his claim. (Pl.'s Resp. Ex. A., ECF No. 15.) Ralph

Palaia, a public insurance adjuster from Hillis, was assigned to handle the investigation and to submit Plaintiff's claim to State Farm. (*Id*.) Palaia prepared an estimate of the costs of repairs totaling $38,307.97. (Estimate, Def.'s Mot. Ex. A.) Palaia submitted the estimate to State Farm on March 30, 2016. (*Id.*; Def.'s Mot. ¶ 4.)

On April 26, 2016, State Farm's claims adjuster, Rob Henry, inspected Plaintiff's property. (State Farm Denial, Def.'s Mot. Ex. B.) Palaia was present during the inspection. (*Id*.) Henry discussed with Palaia his conclusion that the damage was not covered by the Policy. After his inspection, Henry sent Plaintiff a claim denial letter from State Farm. In the denial, Henry stated that "the basement water damage is not covered under the Homeowners Policy." (*Id*.) He explained that he "observed evidence of mold, rot, and deterioration damage to the building materials." (*Id*.) Henry stated that "Mr. Palaia explained the air conditioning condensation line was likely [the] cause of the damage, and that bleach was sprayed onto the carpet and walls in an attempt to remove the mold." (*Id*.) Henry sited sections of the policy that supported his conclusion that the damage was not covered by the Policy. Specifically, he cited the provision of the Policy that excludes coverage for: (1) damage caused by "continuous or repeated seepage or leakage of water" from an air conditioning system, "which occurs over a period of time"; (2) water damage, caused by flood, surface water, or water below the surface of the ground, if concurrently caused by another excludable event; and (3) damage caused by the use of improper materials in the construction or repair of the property, or improper maintenance. (*Id*.)

On June 10, 2016, Palaia sent a letter to State Farm, requesting that it reconsider the denial of Plaintiff's claim. (June 10, 2016 Hillis Ltr., Def.'s Mot. Ex. D.) Palaia stated in the letter that "[t]he insured's policy covers accidental discharge from a plumbing system and this

loss was caused by an air conditioning condensate line that leaked and caused damage to his dwelling." (*Id*.) Palaia also stated in the letter that this was a "one time occurrence and not due to repeated seepage." (*Id*.) According to Palaia, the air conditioner condensate line leaked and caused water to be discharged into the furnace. (*Id*.) He stated that the water damage that is seen throughout the furnace and air filter supports his conclusion. Palaia further stated that the water traveled from the heater throughout the basement and caused damage to the walls, the carpet, and to the contents in the rooms. (*Id*.)

Claims adjusters at State Farm reviewed Palaia's request to reconsider the denial, and determined that Plaintiff submitted no additional information that would alter their decision to deny coverage. (Claims Notes SF019-SF020, Def.'s Mot. Ex. B.) On July 27, 2016, State Farm advised Palaia that there would be no change in their coverage decision with regard to Plaintiff's claim. (*Id*.)

### B. Procedural History

On October 26, 2016, Plaintiff filed a Complaint in the Philadelphia County Court of Common Pleas. (Compl., Notice of Removal Ex. A.) On November 11, 2016, State Farm removed the case to this Court. The Complaint asserts two counts: (1) breach of contract; and (2) bad faith. On March 5, 2017, State Farm filed the instant Partial Motion for Summary Judgment. On March 26, 2017, Plaintiff filed a Response to the Motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of*

3

*Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id.* The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" (citation omitted)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. DISCUSSION

Plaintiff alleges that State Farm's denial of his claim constitutes bad faith. Specifically, Plaintiff argues that: (1) State Farm failed to cite a factual basis for its denial of the claim; (2) State Farm unreasonably relied on an ambiguous and unenforceable policy exclusion for loss

caused by continuous or repeated seepage, "which occurs over a period of time," (Compl. ¶ 15); and (3) there was no evidence to support another exclusion cited by State Farm—that the damage was the product of concurrent groundwater entering the property or repeated seepage or leakage of water. State Farm seeks summary judgment on Plaintiff's bad faith claim. State Farm argues that at all times it acted in good faith when investigating and ultimately denying Plaintiff's claim.

Under Pennsylvania's bad faith statute, courts may award interest, punitive damages, costs and attorneys' fees, in actions arising under an insurance policy, if it is determined that the insurer has acted in bad faith towards the insured. 42 Pa. Stat. and Cons. Stat. Ann. § 8371.

The term "bad faith" is not defined in the statute. The Pennsylvania Superior Court has stated that bad faith includes "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)). "'For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.'" *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (quoting *Terletsky*, 649 A.2d at 688).

An insured bringing a bad faith claim must prove by clear and convincing evidence that the insurer "(1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003) (citing *Keefe*, 203 F.3d at 225). The "clear and convincing" evidentiary standard requires that bad faith be proven through evidence that is so "clear, direct, weighty and convincing so as to enable the court to make its decision with a clear conviction." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 752 (3d Cir.

1994) (citations omitted). In other words, it must be proven and "not merely insinuated." *Terletsky,* 649 A.2d at 688; *see also J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) ("Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." (citation omitted)).

Based upon our review of the record, we are satisfied that Plaintiff has failed to show by clear and convincing evidence that State Farm acted in bad faith. Specifically, Plaintiff has failed to assert facts sufficient to demonstrate that State Farm (1) lacked a reasonable basis for denying Plaintiff's insurance claim, and (2) knew or recklessly disregarded its lack of reasonable basis for that denial. Upon receiving the damages estimate from Plaintiff's public adjuster, State Farm immediately sought to schedule a site inspection of Plaintiff's home, and coordinated to have Palaia present during the inspection. At the inspection, State Farm's adjuster, Rob Henry, observed various parts of the basement, and concluded that the Policy did not provide coverage for at least three reasons. Henry concluded that the Policy did not cover the water damage in Plaintiff's basement because the damage appeared to be caused by a repeated leakage of water from multiple sources that had caused mold, rot, and deterioration. Henry explained these reasons to Palaia. Henry also explained the things he observed during the inspection, and the reasons they were not covered under the policy in the denial letter that was sent to Plaintiff. There is no evidence in the record demonstrating that State Farm failed to properly investigate Plaintiff's claim. *See Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006) ("Bad faith conduct also includes lack of good faith investigation into facts." (citation omitted)). Moreover, there is no evidence in the record showing that State Farm's denial of Plaintiff's claim was "frivolous or unfounded," or that it was motivated by "self-interest or ill will," *Terletsky*, 649 A.2d at 688 (citation omitted). The evidence reveals that State Farm acted reasonably and in

6

good faith at all times during the claims investigation and handling process. Plaintiff's arguments are unavailing.

Contrary to Plaintiff's allegations, State Farm provided a factual basis to support its denial of Plaintiff's claim. In the denial letter to Plaintiff, Henry stated:

> Thank you for the courtesy you extended during my inspection of your claim on April 26, 2016. As I reviewed with your public adjuster, Ralph Palaia, the basement water damage is not covered under the Homeowner's Policy. During the inspection, I observed evidence of mold, rot, and deterioration damage to the building materials. Mr. Palaia explained the air conditioning condensation line was likely cause of the damage, and that bleach was sprayed onto the carpet and walls in an attempt to remove the mold. I also observed water damage in and around the basement window, which I explained would also not be covered.

(Denial Ltr.) In fact, during the inspection, Henry explained to Palaia the factual basis for his decision to deny Plaintiff's claim. In State Farm's claim file, Henry included the following note:

> Determination of Coverage: Water has been leaking in basement for a period of time, there is mold growing up drywall, doors and trim are beginning to rot. (see photos). Explained to [Public Adjuster] Ralph Palaia repeated leakage and seepage is not covered along with the mold. Explained will mail out denial letter explaining. He understood.

(Def.'s Mot. Ex. B at SF021.) Also included in the denial letter are the specific provisions of the Policy that preclude coverage based on the findings outlined by Henry.[1] State Farm provided an adequate factual basis to support its denial of Plaintiff's claim.

In addition, Plaintiff's argument that State Farm improperly relied on an ambiguous exclusion to deny coverage is without merit. Plaintiff contends that State Farm acted in bad faith because the policy language concerning "continuous or repeated seepage or leakage," which "occurs over a period of time" is vague and ambiguous. (Denial Ltr.)

---

[1] For example, the Policy does not provide coverage for damages caused by "continuous or repeated seepage or leakage of water or steam" from an air conditioning unit, "which occurs over a period of time." (Denial Ltr.) The Policy also does not provide coverage for "mold, fungus or wet or dry rot" or for damage caused by subsurface or ground water. (*Id.*)

7

Where "the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 293 (3d Cir. 2012) (quoting *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). However, if a provision of a policy is ambiguous, courts generally construe the provision in the insured's favor. *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008). A provision in an insurance policy is ambiguous if "it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id*. (citations and internal quotation marks omitted). If possible, courts must interpret an insurance policy to avoid ambiguity and give effect to all of its provisions. *Am. Auto Ins. Co. v. Murray*, 658 F.3d 311, 321 (3d Cir. 2011).

The phrase "occurs over a period of time" is not defined by the Policy. However, this does not render the phrase ambiguous. *See Simon Wrecking Co. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 636 (E.D. Pa. 2004) ("The mere fact that a term used in the policy is not defined does not make the policy ambiguous."). Rather, "[w]here critical terms are left undefined in a policy, Pennsylvania case law instructs that 'words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and we may inform our understanding of these terms by considering their dictionary definitions.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435-36 (3d Cir. 2006) (quoting *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (1999)).

"Period" is defined as "a portion of time determined by some reoccurring phenomenon." Miriam-Webster's Collegiate Dictionary 861 (10th ed.). When reading "period of time" in the context of the entire exclusion—particularly the language "continuous or repeated seepage or leakage"—it is apparent that the Policy does not provide coverage for damage that occurs due to

8

events that are continuous or repeated. In contrast, the Policy would provide coverage for damage that is caused by single, isolated events that do not occur over a period of time. There is nothing that is ambiguous about the phrase "over a period of time" when read in the context of the entire exclusion. *See, e.g.*, *Fifth v. State Farm Ins. Co.*, No. 11-7440, 2014 WL 1253542, at *5 (D.N.J. Mar. 25, 2014) (finding exclusion for leakage and seepage of water "over a period of time" unambiguous, and concluding that leakage over the course of one month fit within the exclusion).

Even if the phrase were ambiguous, this does not mean that State Farm engaged in bad faith by denying Plaintiff's claim. If a phrase in an insurance policy is ambiguous, it simply means that the phrase is susceptible to reasonably different interpretations. The fact that State Farm may have interpreted the phrase differently than Plaintiff is not sufficient to support a bad faith claim. An insurer's "mere negligence" or "bad judgment" does not amount to bad faith. *Terletsky*, 649 A.2d at 688 (citation omitted); *see also Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) ("Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law.") (citation omitted).

Finally, State Farm acted reasonably in denying coverage because the evidence supports a finding that the anti-concurrent causation section of the Policy applies.[2] That section prohibits

---

[2] That anti-concurrent exclusion provides as follows:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

coverage when damage is caused by a specific excluded loss, such as surface water or underground water. After Plaintiff filed the Complaint, State Farm provided expert evidence showing that the damages being claimed by Plaintiff were the result of repeated leaks and seepages from multiple water sources at Plaintiff's property. Specifically, engineer Gary Popolizio, concluded that:

> the basement has experienced the effects of multiple water/moisture sources and inflow events that have occurred at multiple times and dates that include, but not limited to, the following:
>
> 1. Ground and surface water.[3]
> 2. A lack of sufficient ventilation and airflow.
> 3. Water heater leaks.
> 4. Condensate drain line discharges.

(Popolizio Report 7, Def.'s Mot. Ex. F.) Popolizio provided specific factual observations to support each of these conclusions. For example, with respect to ground and surface water, Popolizio stated that "[t]he variable degree of stain marks, rot, and wicking action present is indicative of an ongoing issue not related to a singular event." (*Id.*)

---

. . .

    **C.**     **Water Damage**, meaning:
        (1)     flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;
        . . .

        (3)     water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

(Denial Ltr. 2)

[3] At his deposition, Plaintiff testified that surface water had entered a window in the basement during Hurricane Sandy, which occurred on October 29, 2012. (Pl.'s Dep. 49-50, Def.'s Mot. Ex. E.) Plaintiff did not submit a claim for this event.

Plaintiff has submitted no conflicting expert evidence. The only evidence Plaintiff proffered was the estimate of damages submitted by his public adjuster, Palaia, and the letter from Palaia stating his belief that the cause of the damage was a "one time occurrence" and "not due to any repeated seepage." (June 10, 2016 Hillis Ltr.) Palaia's conclusion contradicts Henry's conclusion. While this may create a factual dispute as to coverage, it does not demonstrate bad faith on the part of State Farm. It was not unreasonable for State Farm to deny coverage based on Henry's determination that the water damage was caused by repeated leakages of water that had caused mold, rot, and deterioration. Plaintiff has failed to show by clear and convincing evidence that State Farm acted unreasonably in its denial of his insurance claim. There is no genuine issue of material fact for trial. Accordingly, judgment in favor of State Farm is appropriate with respect to Plaintiff's bad faith claim under Pennsylvania law.

IV. **CONCLUSION**

For these reasons, Defendant's Motion for Partial Summary Judgment will be granted. An appropriate Order follows.

                                                      **BY THE COURT:**

                                                _____
                                                **R. BARCLAY SURRICK, J.**